POSTED ON WEBSITE

FILED
MAR 27 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )    Case No. 05-19632-B-13
                                         )
Victoria Jean Anderson,                  )    DC No. MHM-1
                                         )
        Debtor.                          )
_____)

## MEMORANDUM DECISION REGARDING MOTION FOR ORDER OF DISMISSAL PURSUANT TO 11 U.S.C. SECTION 1307

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee ("Meyer").

Adrian S. Williams, Esq., appeared on behalf of the debtor, Victoria Jean Anderson (the "Debtor").

Before the court is a motion brought by Meyer, the standing chapter 13 trustee, to dismiss the above-captioned case for cause pursuant to 11 U.S.C. § 1307(c)(6) (the "Motion"). Prior to the bankruptcy, the Debtor operated a business that generated accounts receivable (the "Accounts Receivable"). Meyer alleges that the Debtor materially breached the terms of her confirmed chapter 13 plan. Specifically, Meyer contends that the Debtor failed to give an accounting and turn over the proceeds of her Accounts Receivable as required by the order confirming her plan (the "Confirmation Order"). For the reasons set forth below, Meyer's Motion will be denied on condition that the Debtor immediately modify her plan to provide for a distribution to unsecured creditors of an additional $16,000, the scheduled value of the Accounts Receivable.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 1307[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Findings of Fact.**

From 1995 until December 2004, the Debtor operated a business as a licensed surgical assistant, independently contracting with doctors, primarily orthopedic surgeons, to provide surgical support (the "Business"). The Debtor's services during this time were billed through the doctors to the patients' insurance companies. After December 2004, the Debtor began working as a Nurse Practitioner for the California Department of Mental Health. This bankruptcy was filed as a chapter 13 petition on October 12, 2005, about ten months after the Debtor ceased working as an independent contractor. Debtor scheduled $571,930 in total assets. Debtor's Schedule B listed the Accounts Receivable valued at $16,000. She did not exempt the Accounts Receivable. In the Debtor's Statement of Financial Affairs, she listed Medical Billing and Integration Services, Inc. ("MBIS") as the bookkeeper/accountant that kept or supervised the Debtor's books and records.[2] MBIS also provided the billing and collection services for the Business.

The Debtor's chapter 13 plan was filed with her petition. The proposed plan required monthly payments to the chapter 13 trustee in the amount of $1,097 for 54

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] MBIS is scheduled as an unsecured nonpriority creditor in the amount of $20,000. The Debtor's Statement of Financial Affairs indicates that $1,000 was paid to MBIS within 90 days immediately preceding the filing of the case.

months. It provided for an 8% distribution to unsecured nonpriority claims in the estimated amount of $119,669. The proposed plan also provided that any property of the estate scheduled under § 521 would remain vested in the bankruptcy estate until the plan is complete and a discharge is entered. The standing chapter 13 trustee at that time was M. Nelson Enmark, Esq., ("Enmark").

The Debtor appeared at her § 341 meeting of creditors on December 13, 2005. Enmark apparently examined the Debtor about the Accounts Receivable listed on her schedules. There were no objections to confirmation of the proposed plan and approximately three weeks later Enmark approved and submitted the proposed Confirmation Order. The Confirmation Order included a provision, approved by both Enmark and the Debtor, which modified the chapter 13 plan with regard to the Accounts Receivable as follows:

1. Debtor agrees that the net proceeds from Accounts Receivables listed on schedule B will be paid to Chapter 13 Trustee for the benefit of the unsecured creditors.

2. Debtor agrees to give the Chapter 13 Trustee an accounting of said proceeds.

3. Chapter 13 Trustee will require an annual review of Debtor's records and Chapter 13 Plan. (the "Modified Plan")

The Confirmation Order was entered on January 10, 2006. Thereafter, the Debtor failed to provide Enmark with any accounting of her Accounts Receivable, and she did not turn over any "proceeds" to Enmark. On January 25, 2007, more than one year after the Modified Plan was confirmed, a member of Enmark's staff sent a letter to the Debtor, with a copy to Debtor's attorney, Adrian S. Williams, Esq. ("Williams") advising that the Debtor was still responsible for performing the provisions on the Modified Plan. On or about February 12, 2007, the Debtor informed an unidentified member of Enmark's staff, in a telephone call, that the Accounts Receivable had been assigned to a collection company (the "February Telephone Call"). The Debtor was advised to contact Williams regarding compliance with the Modified Plan.

Five months later, on July 20, 2007, a member of Enmark's staff made a follow-up

telephone call to William's office requesting that Williams contact the Debtor about the Accounts Receivable and her failure to comply with the Modified Plan. No further action was taken with regard to the Accounts Receivable issue by Enmark, Williams, or the Debtor.

On October 1, 2007, Meyer replaced Enmark as the standing chapter 13 trustee in this case and Enmark's case file was transferred to Meyer. In reviewing the case file, Meyer determined that the Debtor had not complied with the "Accounts Receivable" portion of the Modified Plan. On December 20, Meyer noticed this Motion based on, *inter alia*, a material default with respect to the terms of the Modified Plan. In opposition to the Motion, the Debtor filed a declaration and a supplemental declaration with attached exhibits seeking to establish the following facts: Debtor worked as an assistant surgeon and billed insurance carriers through the surgeons' offices. Debtor's billing service, MBIS, was given all of Debtor's billing records and patient charts. MBIS made an effort to collect the Accounts Receivable from the insurance carriers and patients. Debtor was told by the physicians with whom she worked, and also believed, that it would be "inappropriate" to sue the patients for bills not paid by the insurance companies.

Debtor submitted with her opposition unverified copies of documents which she contends evidence the Accounts Receivable and the efforts made by MBIS to collect those accounts. The Debtor also offered into evidence a letter from the CEO of MBIS, John A. Devlin ("Devlin"). Devlin's letter does not really address the issue. Devlin writes that some Accounts Receivable were written off either because the insurance companies had refused payment for surgical assistant services, or the services were provided to Pacific Care members. Devlin's letter states: "It is my understanding that Pacific Care subcontracted physician payment to Matrix IPA which subsequently filed bankruptcy." Devlin's letter does not clearly connect the Debtor's documents to the $16,000 asset stated in the Debtor's schedules.

Debtor states that she telephoned Enmark's office on at least two occasions after receiving Enmark's letter and explained the circumstances of the Accounts Receivable.

Each time Debtor was purportedly told by some unidentified person that the telephone call was a sufficient response to satisfy the conditions of her Modified Plan. The Debtor offered no testimony from Enmark, or any member of his staff regarding these communications, or to corroborate the Debtor's suggestion that someone from Enmark's office somehow excused her from further performance of the Accounts Receivable provision in the Modified Plan.

At the hearing on Meyer's Motion, Williams appeared with the Debtor. Williams acknowledged that the Debtor had not provided any accounting to Enmark. He further represented that he had been in possession of the relevant documents for "a long time" but that he neglected to do any follow-up after entry of the Confirmation Order.

**Issue.**

The first issue before the court is whether the Debtor materially breached the terms of her Modified Plan when she and Williams failed to furnish a timely and proper accounting to Enmark and/or turn over the proceeds of her scheduled Accounts Receivable. If the answer to that question is yes, then the second issue is whether the Debtor's breach constitutes "cause" to dismiss the case under § 1307(c)(6).

**Applicable Law.**

Bankruptcy Code § 1307(c) provides that the court may convert or dismiss a chapter 13 case, for cause. The term "for cause" is defined in subsection 1307(c)(6) to include "material default by the debtor with respect to a term of a confirmed plan."

The court has the discretion, pursuant to §1307(c), to dismiss a case for material breach, but is not compelled to do so. The court in *In re Hill*, 374 B.R. 745 (Bankr. S.D. Cal. 2007) struggled with the "cause" issue in a pair of cases where payments had always been made on time and there was no bad faith. However, it was discovered halfway into the plans that performance of the plans would actually run several years longer than the stated plan terms. The court held that a material breach had occurred however denied the trustee's motions to dismiss, stating:

///

The fact that the Court has found a material breach of a plan term does not compel conversion or dismissal under §1307(c), however. Congress certainly could have written "*shall* convert or dismiss", but instead Congress wrote 'may', which grants this Court discretion to decide whether to dismiss even in the face of a material breach."

*Id.* at 749 (emphasis original).

Bankruptcy Code § 1325(a)(4) requires, as an element of confirmation, that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." The debtor has the burden to prove that every element of § 1325(a) is satisfied before the plan can be confirmed. *In re Ho*, 274 B.R. 867, 883 (9th Cir. BAP 2002).

All who are involved in a chapter 13 case have roles prescribed by Congress and interpreted by the courts. The debtor, the chapter 13 trustee, and the court all have obligations in connection with the proceeding. First and foremost, after the chapter 13 plan is confirmed, the debtor is bound, as a matter of law, by the terms of the plan. § 1327(a). In all chapter 13 cases filed in the Eastern District of California, debtors and their attorneys execute and file a document entitled "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys." This document spells out the duties of each debtor and their attorney both before, and after, the case is filed. Debtors are to provide the attorney with accurate financial information and to discuss with the attorney the debtor's objectives in filing the case. The attorney has a duty, as a matter of law, to effectively and diligently represent his client. The attorney's duties prescribed in the Rights and Responsibilities Statement include explaining to the debtor how, when, and where to make plan payments, and to timely prepare, serve, and file various documents including plan amendments where necessary and modifications to the plan.

The chapter 13 trustee's duties are quite broad. The trustee must investigate the financial affairs of the debtor and has the power to sue and to be sued. § 323(b). Sections 1302(b)(4) & (5) direct the chapter 13 trustee to assist the debtor in performance under the plan and to ensure that the debtor does perform the plan in compliance with

6

§ 1326. Implicit in §1307(c)(6), the trustee also has a duty to monitor the debtor's performance under a plan and take appropriate action if there is a material default with respect to a term of a confirmed plan. "The chapter 13 trustee may not become a mere disinterested bystander once the plan has been confirmed, but is to assist the debtor by advising of the means available to the debtor for facilitating performance under the plan . . .." 8 *Collier on Bankruptcy*, (15th Ed. Revised), ¶ 1302.03[1][j] at 1302-20.

### Analysis and Conclusions of Law.

Here, the Debtor scheduled her Accounts Receivable as an asset worth $16,000. Meyer argues that pursuant to § 1325(a)(4) the unsecured creditors had a right to expect that the value of that asset would be distributed to pay unsecured claims in this chapter 13. The court agrees. It is obvious that Enmark spotted the same issue when he reviewed the Debtor's proposed plan for confirmability, which explains the provision which he and the Debtor agreed to insert in the Confirmation Order. To satisfy § 1325(a)(4), the Debtor promised to give Enmark a full accounting of the Accounts Receivable and to turn over all proceeds of that asset. For reasons which the Debtor now attempts to explain, she failed to do either.

In simple terms, this appears to be a case in which everybody charged with the responsibility for administration of this case failed to do what they were supposed to do with regard to the Accounts Receivable. Starting with the Debtor, if she is correct in her assertion that the Accounts Receivable were "uncollectible" at the commencement of her case, then she failed to file complete and accurate schedules showing the value of that asset. After the Modified Plan was confirmed, she failed to take seriously her obligation to do what the Confirmation Order required. Williams too failed in his professional responsibility to his client, and to the court, to properly advise the Debtor regarding the preparation of her schedules and compliance with the Modified Plan. To the extent that the Debtor did attempt to comply by delivering some copies of documents to Williams, he totally failed to assure that those documents were properly and timely delivered to Enmark - he simply "dropped the ball." Finally, Enmark failed to properly oversee

7

administration of the Modified Plan. He failed to conduct an "annual review" of the Debtor's records as contemplated in the Confirmation Order. It was over a year after confirmation of the Modified Plan before Enmark even inquired regarding the Accounts Receivable and the accounting that was required from the Debtor. Even when he failed to get an adequate response, he took no action to enforce the Modified Plan for another nine months and then, by default, "punted" the problem to Meyer.

That having been said, the court is persuaded that the Debtor has materially breached the terms of her Modified Plan. The Debtor was obligated to give an accounting of the Accounts Receivable referenced in her schedules. Williams should have been far more proactive in monitoring her performance with regard to the Accounts Receivable. The documents provided in response to Meyer's Motion are not an "accounting" in the generally accepted usage of that term. The Debtor provided a set of poor quality copies that appear to be records she obtained from MBIS. Those documents suggest that MBIS collected nothing for the few accounts to which the documents relate. This bankruptcy was not filed until months after the Debtor ceased operating as an independent contractor. At that time, she valued her outstanding Accounts Receivable at $16,000. The Debtor did not provide a complete set of records to show what "accounts" were originally turned over to MBIS for collection. She did not provide any of the records that she relied upon in the preparation of her schedules and her valuation of the Accounts Receivable. She did not provide any records to show what MBIS actually collected after the Debtor closed her business in 1994, or how those monies were distributed.

Having failed to timely perform the Modified Plan, it is the Debtor's burden to show that the default has now been cured. In response to the Motion, the Debtor lodged copies of a few purported billing records dating from 2001 to December 2004. The Debtor states that she informed Enmark's office in the February Telephone Call that the Accounts Receivable were "uncollectible" and "of no value." However, that was not a judgment call for the Debtor to make. Her duty was to give Enmark a full accounting of

the Accounts Receivable. The Debtor cannot make that statement without competent supporting evidence. The Debtor still has not provided that accounting, nor has the Debtor shown that she is still able to do so. Accordingly, the Debtor is still in material default of the Modified Plan.

The next question is, What should this default mean? The Debtor ceased operating her Business in December 2004. She did not file for bankruptcy protection until October 2005, about ten months later. By the time the Debtor filed her petition, all of the Accounts Receivable were ten months old or older. If, as the Debtor contends, all of her Accounts Receivable had been "written off" as uncollectible by that time, why did the Debtor list them in Schedule B, with a substantial value? Why did the Debtor agree to turn over "proceeds" from her Accounts Receivable to Enmark as part of the Confirmation Order? The Debtor is obligated to distribute the value of her Accounts Receivable to unsecured creditors. The court is not persuaded that those Accounts had no value of the commencement of this case and the passage of time since entry of the Confirmation Order now makes that determination difficult if not impossible. Accordingly, by the terms of the Modified Plan, the Debtor is still obligated to pay $16,000 to the unsecured creditors.

The Debtor states that had she known that there would be a subsequent trustee (Meyer) who would not be satisfied by Debtor's telephonic calls, she would have prepared the supplemental documents earlier. She further states that had she realized the Accounts Receivable were potentially uncollectible, she would have been more "explicit" regarding their value in the bankruptcy schedules, and in the Modified Plan. This strikes the court as an odd response to the issue raised in Meyer's Motion. This response suggests that the Debtor never took seriously her duty to prepare accurate schedules in the first place. Further, the Debtor never took seriously her duty to comply with the Modified Plan. It further suggests that the Debtor anticipated in advance that Enmark would not diligently enforce the Modified Plan. The fact that Enmark is no longer the trustee in this case does not exonerate the Debtor from her statutory obligation to the creditors.

The Debtor's response mischaracterizes the issue. The issue before the court is not the present value, *i.e.*, the collectability of her Accounts Receivable. The issue is the Debtor's failure to give the chapter 13 trustee a complete and accurate accounting and to turn over the proceeds of an asset which she listed on her bankruptcy schedules to have a value, at that time, of $16,000. The court has no doubt that the Accounts Receivable, or what's left of them, may today be virtually worthless. However, the court is not persuaded from the record that the Accounts Receivable have been (1) fully accounted for as of the petition date, and (2) that there was not some value in those Accounts at that time. Unfortunately, due to the Debtor's failure to take her obligation under the Modified Plan seriously, and the ensuing passage of time, it is now too late for Meyer to make a meaningful assessment of the Accounts Receivable's value.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Debtor has materially breached the terms of her Modified Plan by failing to provide a complete and timely accounting of her Accounts Receivable to Enmark after entry of the Confirmation Order. The default can only be cured if the unsecured creditors receive the value of the assets, which the Debtor listed in her Schedule B - $16,000. The Debtor shall have 30 days to file and notice a hearing for approval of a modified chapter 13 plan which provides for distribution of an additional $16,000 to unsecured creditors. The term of the Modified Plan can be extended up to six months, if necessary, to make it feasible. Alternatively, the Debtor may stipulate with Meyer to increase her monthly payments to distribute an additional $16,000 to unsecured creditors over the remaining term of the Modified Plan.

Dated: March 27, 2008

W. Richard Lee
United States Bankruptcy Judge